Howard H. LEWIS and Atlantic Richfield Company, Plaintiffs–Appellees,

v.

Evelle J. YOUNGER, Warren J. Abbott, Robert H. O'Brien, Gary M. James, H. Chester Horn, Jr., Michael I. Spiegel, Linda L. Tedeschi, Patricia Cutler, Richard N. Light, William S. Clark, L. Naomi Wilkes, Elliott Melnick, Ken Ilchene, Carol Gerber, and Virginia Spielberg, Defendants–Appellants.

Nos. 77–3834, 77–3843, 78–2509 and 78–2699.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1979.

Decided Oct. 17, 1980.

As Amended Dec. 17, 1980.

Rehearings Denied May 5, 1981.

John A. Donovan, Otis Pratt Pearsall, New York City, argued for Lewis et al.; Norbert A. Schlei, Hughes, Hubbard & Reed, Los Angeles, Cal., on brief.

Linda L. Tedeschi, San Francisco, Cal., for Younger.

Before WALLACE and KENNEDY, Circuit Judges, and CRAIG,* District Judge.

KENNEDY, Circuit Judge:

This appeal is from a judgment of the District Court for the Central District of California granting appellees, the Atlantic Richfield Company (ARCO), and its corporate secretary, Lewis, a permanent injunction against the Attorney General of California. The court enjoined the Attorney General from conducting an investigation into possible state antitrust violations which ARCO may have committed in connection with the marketing of Alaskan natural gas in California.

The district court proceeded on the assumption that the Attorney General's sole purpose in investigating ARCO and issuing subpoenas duces tecum to it was to determine if California antitrust laws were being violated, and then to bring suit against ARCO under those state statutes. Cal.Bus. & Prof.Code §§ 16720–16904 [hereafter cited as Cartwright Act]. The lower court held that California antitrust laws were preempted by the Alaska Natural Gas Transportation Act, 15 U.S.C. §§ 719–719o, and the Natural Gas Act, 15 U.S.C. §§ 717–717w. It reasoned that the Attorney General's investigation into possible violation of California law also fell within the preempted area.

Given the deference that courts of the United States must accord to the actions of state officials to preserve the allocation of powers in a federal system, an injunction based on the district court's premise would be sustainable only if it were shown that Congress had decreed in this subject area a *cordon sanitaire* which protected entities such as ARCO even from state administrative inquiries conducted prior to suit. Further, it has not been shown that the investigatory orders of the Attorney General are in inevitable collision with the federal scheme. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43,

83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). We doubt that such broad preemptive intent and conflict with the federal scheme can be demonstrated here, even upon the assumption that Cartwright Act liability is preempted by federal statutes. We need not, however, reach the question of Cartwright Act preemption.

It is a false premise that the Attorney General's sole purpose and authority rested on the power to enforce the Cartwright Act. At oral argument of these cases we suggested that the Attorney General's authority to investigate economic transactions of corporate entities within his jurisdiction transcended the Cartwright Act, notwithstanding the fact that the Attorney General initially cited that Act as the primary justification for issuance of the subpoenas. Subsequently, the California Supreme Court confirmed this view in an opinion granting enforcement of subpoenas issued against other oil companies which are also subjects of the Attorney General's investigation. *Younger v. Jensen*, 26 Cal.3d 397, 161 Cal.Rptr. 905, 605 P.2d 813 (1980). In *Jensen*, the California Supreme Court held that as a matter of state law the power and authority of the Attorney General to investigate was far more extensive than for the purpose of enforcing the Cartwright Act. Other possible purposes of the investigation, authorized under state law, are to make reports to state and federal legislatures and administrative bodies, to recommend remedial legislation and administrative rulings, to determine whether California has jurisdiction over possible antitrust violations, and to attempt to formulate enforcement policy in cooperation with the federal government. 26 Cal.3d at 404–06, 161 Cal. Rptr. at 909–910, 605 P.2d at 817–19. *See also United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 363–364, 94 L.Ed. 401 (1950).

* Honorable Walter E. Craig, United States District Judge for the District of Arizona, sitting by designation.

The district court's ruling on preemption of the California antitrust laws was premature. By enjoining the Attorney General's investigation at its inception, the district court prevented the Attorney General from conducting an investigation for which there were several proper objectives. Courts will not presume that information sought by state officials for which there is a legitimate purpose will be put to an unconstitutional use. *Natural Gas Pipeline Co. v. Slattery*, 302 U.S. 300, 309, 58 S.Ct. 199, 203, 82 L.Ed. 276 (1937). Even assuming, for the sake of argument, that the California antitrust laws are preempted in their application to the distribution of Alaska natural gas by the Transportation Act and the Gas Act, appellees can properly litigate that issue if and when the Attorney General attempts to enforce the substantive requirements of California law against them after completion of his investigation. *Id.; Dalton Adding Machine Co. v. State Corp. Comm'n*, 236 U.S. 699, 35 S.Ct. 480, 59 L.Ed. 797 (1915); *Newmark & Co. v. Wirtz*, 330 F.2d 576 (2d Cir. 1964). Litigation at that time would avoid unnecessary federal interference with the proper activities of state executive officials.[1] *Public Utilities Comm'n v. United Fuel Gas Co.*, 317 U.S. 456, 468–69, 63 S.Ct. 369, 375–376, 87 L.Ed. 396 (1943); *Slattery, supra*, 302 U.S. at 310, 58 S.Ct. at 204.

The lower court confused the Attorney General's power to obtain information with his power to regulate the distribution of Alaskan natural gas in California. As Davis notes, "the scope of the one power clearly may not properly be measured by the scope of the other." 1 K. Davis, Administrative Law Treatise, § 3.10 at 208 (1958). If the Attorney General is authorized, as he is, to conduct an investigation for the purposes of recommending legislation and making reports to the legislature, his subpoena and investigative power must extend to all information relevant to the investigation. *Id.; United States v. Powell, supra*, 379 U.S. at 57–58, 85 S.Ct. at 254–255; *Oklaho-*

*ma Press Pub. Co. v. Walling*, 327 U.S. 186, 209, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946); *ICC v. Goodrich Transit Co.*, 224 U.S. 194, 211, 32 S.Ct. 436, 439, 56 L.Ed. 729 (1912).

The judgment of the district court is reversed and the case is remanded with instructions to dismiss the complaint.

---

1. We need not address the issue of whether similar federalism concerns require abstention by federal courts under the doctrine of *Younger*

*v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.